IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 18-00466 JB/JTM |
| | ) | |
| vs. | ) | |
| | ) | |
| **CHRISTOPHER RAYMOND LOPEZ**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, through its undersigned counsel, hereby notes that it has

no objections to the Presentence Report (Doc. 28), and files this sentencing memorandum in

support of its request that the Court sentence Christopher Raymond Lopez to 120 months in the

Bureau of Prisons.

### I.      Factual Background

In 2015, a broader investigation into a web-based child pornography ("CP") community

known as "The Giftbox Exchange" led New Mexico-based agents to Christopher Lopez.  The

Giftbox Exchange community hosted users who discussed and previewed CP before arranging

meetings at off-site forums where they transferred the actual CP videos and images.  Naturally,

the site's visitors used invented screennames on the forum.

Investigators discovered a cloud-based hosting site ("Ziifile") that numerous Giftbox

members used to exchange CP.  Among the users of Ziifile was IP Address 75.161.3.103, in

Albuquerque.  This address received a 3:50 minute video from Ziifile which depicted an adult

male anally penetrating a young boy.  The boy was approximately 4-6 years old and visibly in

pain.

Investigators learned that this IP Address belonged to Christopher Lopez, an

Albuquerque resident.  Lopez became a registered sex offender in 1996 after he was convicted of sex conduct with a minor in state court.

Previously, at some point in mid to late 2015, a detective from the Albuquerque Police Department ("APD") Sex-Offender Registry Team ("SORT") visited Lopez.  The detective sought Lopez after SORT received an unusual message from Lopez.  In it, Lopez asked why SORT had not visited him recently.  Lopez added that his behavior required *more* police scrutiny.  A detective decided to see Lopez, and during the subsequent visit, Lopez proved hostile.  Lopez stated that he used 18 to 19 year old men to satisfy his "cravings for minors," and that he would "re-offend" if of-age companions no longer satisfied him.

Based on the aforementioned CP evidence, agents obtained a federal search warrant for Lopez' home on June 27, 2016, and executed it two days later.  Lopez was the sole resident and occupant during the time of the warrant's execution.

Investigators founds Lopez' computer, electronic hardware, and notepads bearing lists of internet usernames within his bedroom.  Agents seized computer hardware, software, and four phones.  Three devices bear proved relevant here:  a detached external hard drive ("Device 1"), located in a dresser drawer along with items of a sexual nature, such as lubricants and condoms; a desktop computer ("Device 2"), located in the bedroom and set on the same dresser drawer; and a thumb drive ("Device 3"), sitting near the desktop computer.  A forensic examination of these devices, concluded on March 15, 2017, confirmed that Lopez possessed a cache of child pornography.

A.    **Device 1**

On Device 1, Lopez' external hard drive, investigators located approximately 80 CP images, one CP video, and articles of child erotica.  Device 1 also contained a backup "VHD"

file—consisting of four CP videos—which originated from Device 2, desktop's internal hard drive.  Device 1 also contained, in its Recycle Bin, evidence of 39 deleted files bearing names indicative of CP, some of which were graphic.  For example, the Recycling Bin contained deleted files titled "12YO 13YO 14YO Black Boys Suck & Fuck Each Other.rar" and "13YO Boy Ricky Masturbates, Strips Naked And Cums – Mar 07.wmv."

   **B.     Device 2**

On the desktop's internal hard drive, Device 2, investigators located 17 CP photographs and 69 CP videos, child erotica, and one bestiality video.  The desktop also contained a document titled "Chris Resume."

The desktop's browser history indicated that Lopez visited Ziifile, the aforesaid exchange forum used by Giftbasket members to share CP.  Moreover, the desktop's Google Chrome history indicated that Lopez accessed several cloud-based sites and, from them, downloaded CP videos which were still saved in the desktop's hard drive.  Device 2 also contained a program named "System Mechanic" which houses a tool, the "Incinerator," that is designed to wipe all trace of deleted files.

   **C.     Device 3**

On Device 3, a thumb drive investigators found on the desk in Lopez' bedroom, were 31 CP videos, five of which were identical to videos on Device 2, the desktop's hard drive.

    In all, investigators located 97 CP images and 95 CP videos on Lopez' electronic mediums.  Lopez was indicted, arrested, and after he received *Miranda* warnings, admitted to obtaining and possessing the CP found on his electronic devices.

   **II.    Restitution**

Lopez pleaded guilty without a plea agreement and there is, so far, no formal stipulation

addressing restitution.  Nevertheless, the Mandatory Restitution for Sexual Exploitation of Children Act and 18 U.S.C. § 2259 are applicable in this case.  The United States is aware of restitution requested pursuant to the indicted conduct, and will attempt to reach a stipulation with Lopez' counsel before addressing restitution at sentencing.

### III.    Argument

Although the United States Sentencing Guidelines ("Guidelines") initially advise a range of 78-97 months, they arrive at a proper Guidelines range of 120 months after accounting for Lopez' prior conviction for a sex offense against a minor.

### A.  The Presentence Report accurately calculates the applicable Guidelines range.

The United States has no objection to the US Probation Department's ("Probation") Presentence Report ("PSR").  Probation accurately arrived at a base offense level of 18 based on the underlying crimes.  PSR at ¶ 26.  Lopez properly received a two-level increase pursuant to Guidelines § 2G2.2(b)(2) because the material involved prepubescent minors.  *Id.* at ¶ 27. Lopez then received a four-level increase because the offense involved material that portrayed sadistic or masochistic conduct, pursuant to § 2G2.2(b)(4).  *Id.* at ¶ 28.  Lopez received a two-level increase for the use of a computer in the commission of the offense, pursuant to § 2G2.2(b)(6).  *Id.* at ¶ 29.  Because the offense involved over 600 images—Lopez possessed 95 videos (each equal to 75 images) and 97 images—a five-level increase applied pursuant to § 2G2.2(b)(7)(D).  *Id.* at ¶ 30.  Finally, Lopez received a three-level reduction for acceptance of responsibility.  *Id.* at ¶¶ 36-37.  An adjusted offense level of 28, combined with a criminal history category I, resulted in a Guidelines range of 78-97 months.  *Id.* at ¶ 88.  By virtue of a prior conviction for a qualifying sex offense, Lopez' Guidelines range is increased to 120

months.[1]  USSG § 5G1.2(b).

**B.  A sentence of ten years is sufficient, but not greater than necessary.**

Pursuant to 18 U.S.C. § 3553(a), "the court shall impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes detailed in 18 U.S.C. § 3553(a)(2).  As an initial matter, the Court shall consider the "nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  "District courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." *United States* v. *Yanez-Rodriguez*, 555 F.3d 931, 946 (10th Cir. 2009).

**1.   The nature and circumstances of the offense**

Possession of child pornography is not a victimless crime.  It encourages the sexual exploitation and rape of children.  A recent study found that child pornography offenses involve two stages of victimization: "One…when the abuse is perpetrated and recorded and [another due to the…] ongoing vulnerability of survivors and the unknown aspect regarding the circulation of the images."  Ex. 1 (A. Gewirtz-Meydan et. al., *The Complex Experience of Child Pornography Survivors*, 80 Child Abuse & Neglect 238, 246 (2018)).

> The fact that pictures could be circulating and could always resurface or be accessed not only planted fear and discomfort among the survivors but also made them feel

---

[1] Lopez presently stands convicted of 18 USC § 2252A(a)(5).  He has a prior conviction, from New Mexico Second Judicial District Case D-202-CR-1995-03686, for Criminal Sexual Contact of a Minor in the 3rd Degree, which involved a child under the age of 12.  PSR at ¶ 46.

Pursuant to 18 USC § 2252A(b)(2), "[w]hoever violates…subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years…or if such a person has a prior conviction…under the laws of any State relating to…*abusive sexual conduct involving a minor*…such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years." (*emphasis* added).  Because Lopez' prior conviction for Criminal Sexual Contact of a Minor in the 3rd Degree qualifies as abusive sexual contact involving a minor, Lopez now faces a minimum sentence of 10 years and a maximum sentence of 20 years.

as if they were re-victimized.  Some survivors distinguished between unfilmed child sexual abuse, and child pornography.  According to them, every abuse eventually ends, yet with child pornography, when images circulate, it feels as if the abuse is constant and continuing.

*Id.* at 244; *see also United States* v. *Norris*, 159 F.3d 926, 929 (5th Cir. 1998) ("The victimization of the children involved [in CP] does not end when the camera is put away.").

Possession of CP does not occur in a vacuum because it advances the market for creation and circulation of more CP.  *See* 136 Cong. Rec. S4729-30 (April 20, 1990) (statement of Sen. Thurmond) (the possession of child pornography "encourage[s] its continual production and distribution"); Child Pornography Prevention Act of 1995, S. Rep. 104-358, 104th Cong., 2nd Sess. 1996, 1996 WL 506545, at 3 (the goal in criminalizing the possession of child pornography was to "encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children").

Nor is consumption's impact only toward the market.  A consumer of CP causes child victims of pornographic abuse to suffer in various ways: (1) the abuse is perpetuated through dissemination, (2) the existence of the image is an invasion of the child's privacy, and as discussed before, (3) the demand for the creation of more images is created by the consumer. *Norris*, 159 F.3d at 929-30.  Therefore, even when an individual does not *produce* child pornography material, participation in the child pornography trade—by pursuing, receiving, and possessing material—encourages and supports what Congress has termed "a national tragedy." H.R. Rep. 98-536 at 1 (1983), reprinted in 1984 U.S.C.C.A.N. 492 ("Each year tens of thousands of children under the age of 18 are believed to be filmed or photographed while engaging in sexually explicit acts for the producers own pleasure or profit.").  Thus, the victimization of

children only *begins* when CP is produced.  The trauma remains present and resurfaces countless times throughout a victim's life.

The CP possessed by Lopez recorded the sexual exploitation of real children, in the United States and elsewhere, and his downloading and viewing of them contribute directly to the ongoing harm inflicted on the child victims.  His collection and viewing of child pornography actively fed the illegal market for these images and passed forward demand for future generations of offense.  Further, unlike many abuse victims, victims of CP live with the undisputable reality that their most disturbing formative experiences were capture on film and used for the sexual gratification of many perpetrators, particularly in the internet age.

### 2.  Lopez' history and characteristics demand a long prison sentence.

Lopez' history suggests a high propensity to act again, on "his urges," beyond even possession or distribution of CP in favor of hands-on abuse.  By way of background, in 1995, Lopez was convicted of criminal sexual contact of a minor in the third degree after he forced his clothed penis against a male child's clothed buttocks.  PSR at ¶ 46.  Lopez remained on a sex offender registry for that offense, and in 2015, called the Albuquerque Police Department to complain that it had been too long since the police visited him.  Lopez told the APD officer who subsequently visited him that he was likely to reoffend with minors should adult companions fail to quench his urges.  PSR at ¶ 10.

Lopez' other convictions show that he struggles to respect the law or the rights of others. In 1984, he was convicted of driving while intoxicated.  PSR at ¶ 41.  The following year, he was again convicted of driving while intoxicated.  *Id*. at ¶ 42.  1988 saw Lopez' third conviction for driving while intoxicated.  *Id*. at ¶ 43.  In 1989, Lopez was convicted of negligent use of a deadly weapon and disorderly conduct while he was intoxicated.  *Id*. at ¶ 44.  In 2009, Lopez was

convicted of assault against his 67 year old aunt.  *Id*. at 47.  These non-sexual crimes show that Lopez' transgressions go beyond just the sexual realm, and are further indicative of his likelihood to reoffend.

### 3.  Additional sentencing factors

In addition to considering the nature and circumstances of the offense and the history and characteristics of the defendant, the Court shall also consider:

> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
> …
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
>
> 18 U.S.C. §§ 3553(a)(2) and (6).

Pursuant to 18 USC § 2252A(b)(2), because of his prior conviction for criminal sexual contact of a minor in the third degree, Lopez must receive a sentence of at least ten years.  Such a sentence would reflect the seriousness of the offense, provide just punishment for the affected victims, protect the public from further crimes of Lopez, and ensure that his sentence will not create an unwarranted sentence disparity among similarly-situated defendants (with similar criminal histories).

[Concluded on the Subsequent Page]

8

## IV.   Conclusion

The United States asks this Court to sentence Lopez to the statutorily-required minimum sentence of 120 months.  Such a sentence is sufficient, but not greater than necessary to comply with the factors set forth in 18 U.S.C. § 3553.  A sentence of 120 months will properly address Lopez' propensity to reoffend given his prior conviction for a sexual offense against a child, the nature of the present offense, his behavior towards law enforcement, and his numerous criminal convictions for non-sexual behavior, all of which suggest that Lopez remains a risk to children in the community.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

***Electronically filed on February 25, 2019***
Shaheen P. Torgoley
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that the foregoing pleading was electronically filed through the CM/ECF system, which caused counsel of record for defendant, B.J. Crow, Esq., to be served by electronic means.

*/s/      Shaheen P. Torgoley*
Shaheen P. Torgoley
Assistant United States Attorney